## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| GREGORY ROYAL, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § Case No. **A19CV0822RP** |
| | § |
| INTEGREON MANAGED SOLUTIONS, INC., | § |
| | § |
| Defendant, individually and jointly, | § |
| | § |
| MARNI HELFAND, | § |
| | § |
| Co-Defendant, individually and jointly, | § |
| | § |
| JULIE LAUFENBERG, | § |
| | § |
| Co-Defendant, individually and jointly, | § |
| | § |
| HAILEY CHOI, | § |
| | § |
| Co-Defendant, individually and jointly, | § |
| | § |
| CATHERINE HOUGH, | § |
| | § |
| Co-Defendant, individually and jointly, | § |
| | § |
| JASON GUCKERT, | § |
| | § |
| Co-Defendant, individually and jointly, | § |
| | § |
| ANGELA ABNEY, | § |
| | § |
| Co-Defendant, individually and jointly, | § |
| | § |
| (Other individuals to be discovered and named | § |
| during discovery in this proceeding as | § |
| co-defendants, individually and jointly), | § |
| | § |
| _____ | § |

## <u>VERIFIED SECOND AMENDED COMPLAINT</u>

The Plaintiff requests a trial by jury.

1.      I. _GREGORY ALLEN ROYAL_ affirm and make the following statements under the penalties for perjury:

2.      Plaintiff Gregory Royal (hereinafter "Royal"), proceeding *pro se*, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. § 1981.

3.      Plaintiff Gregory Royal brings his action to remedy acts of employment discrimination, harassment, hostile environment, and retaliation based upon his opposition conduct and race, defamation *per se*, and intentional infliction of emotional distress, perpetrated against him by Integreon Managed Solutions, Inc. (Integreon) and its agents.

## Statement of Facts

4.      Discovery is necessary and hereby requested.

5.      Royal makes each and every one of the following allegations on information and belief.

6.      At all times material, Royal is a resident of the state of Texas having address located at 8100 N. Mopac Expy., Apt. 277, Austin, Texas 78759.

7.      At all times material, Integreon is a business operating in the state of Texas and under its laws having physical address located at 9900 Spectrum Drive, Austin, Texas 78717.

8.      At all times material, Integreon operated its electronic document review center in Austin, Texas with essentially two types of employees: (1) those temporary and contracted employees staffed by third-party staffing agencies, e.g., Synergy Legal Staffing, at Integreon, and (2) those having supervisory and authoritative positions over the temporary and contracted employees, such as electronic document review center directors, managers, supervisors, project managers, project team leads, or the like, acting on behalf of and essentially the same as Integreon.

9.     At all times material, Royal was a temporary and contracted employee.

10.     At all times material, Royal was a member of a protected class because of he is African American.

11.     At all times material, Royal was qualified for the job position as an electronic document reviewer having at least three years prior experience as an electronic document reviewer.

12.     At all times material, Royal performed his job duties satisfactorily based on the tools and computer equipment provided to him to perform his job by Integreon.

13.     At all times material, Royal was treated adversely and differently than at least one non-African American employee who was a peer to and in the same position as Royal.

14.     From on or about June 2018 up to on or before 6 July 2018, Royal performed discovery review of electronic document using the Relativity tool (hereinafter "Relativity") on behalf of and for the benefit, including but not limited to the financial benefit, of Integreon.

15.     Angela Abney monitored the electronic document review rates of reviewers.  She had authority to send out feedback email communications to reviewers directing particular reviewers to speed up and increase their review rates or their employment at Integreon would go under administrative review.

16.     In general, if document reviewers did not receive feedback on their job performance, it was accepted throughout the project that the reviewers work was satisfactory.  Integreon sent feedback emails regarding low job performance to specific reviewers whose review rates were of concern and beneath Integreon's expected average.

17.     Integreon's expected average was often not communicated to reviewers, and often a particular reviewer who had received an feedback email from Integreon had to asked for that expected average.

3

18.     During said timeframe of June 2018 up to on or before 6 July 2018, Royal may have received a single—only one—feedback email communication from Integreon regarding his job performance.

19.     In response to that feedback, Royal reported back to Integreon that he had been recently been placed on the respective project and had been assigned batches of electronic documents consisting of out of average, larger than generally received, double-digit megabytes size ranges, when average sized or normal document sizes were within the kilobytes size ranges.

20.     On or about the weekend and week of the Fourth of July holiday, 4 July 2018, Integreon announced not only that it would be opened on the Fourth of July holiday but also that it would be opened for extended hours.

21.     Royal decided that he would work during and through the Fourth of July holiday because he needed the monetary earnings but to make his sacrifice enjoyable, he would go into work and attempt to review as many documents accurately but as quickly as possible.  Royal decided that each day before, on, and after the holiday, he would set a goal to surpass his number of reviewed documents from the previous day.

22.     From on or about 30 June 2018 up to and including 4 July 2018, Royal had successfully reviewed over nine thousand (9000) documents.

23.     Royal had not received any or any considerable feedback email(s) regarding any inaccuracies or defects found by Integreon concerning his electronic review and work product.

24.     During said timeframe of June 2018 up to on or before 6 July 2018, Royal (I) witnessed and made it his point to observe multiple Integreon agents, having supervisory and or decision-making authority over the external-contracted/staffed reviewers, observe but allow a white male to goof-off and not performed his job duties.

25.     The Integreon agents that Royal observed included Catherine Hough (hereinafter "Hough"), who was a project manager having supervisory authority over the external-contracted/staffed reviewers, including Royal.  Hough's supervisory authority included authority to remove and exclude the external-contracted/staffed reviewers from projects at Integreon.  Hough's authority also included authority to request that Haley Choi and or Julie Laufenberg removed Royal from a project.

26.     Royal knew the white male as having a first name of "Jason" but Royal did not obtain Jason's last name.  Therein my EEOC complaint I inadvertently listed his name as "Michael" but that was in error.

27.     Royal (I) observed that Jason would come into work and login into his computer and Relativity, but soon thereafter leave his workstation.  Jason would remain away for considerable periods of time, including for multiple hours.

28.     Jason would come into work wearing a vacation shirt similar to Johnny Bahamas or Hawaiian styled shirt, cargo shorts, and flip-flop slippers.  He would sometimes smell of alcohol which was an obvious easily detected odor.

29.     Royal (I) not only watched the Jason goof off and not perform electronic document review but also personally conversed with and questioned Jason on whether he had ever been confronted by Integreon for claiming time  and not performing electronic discovery.

30.     Royal (I) specifically question Jason regarding the deliberate indifference by Catherine Hough in particular.  I had observed that Hough's engagements with Jason showed that she was particularly found of him, seemingly physically attracted to Jason.

31.     Royal (I) observed that when engaged with Jason, Hough played with her hair in flattering ways as if to flirt and invaded his personal space, i.e. less than arm's length away.

5
The Plaintiff requests a trial by jury.

32.     Royal (I) was able to hear multiple conversations between Hough and Jason.  On multiple occasions Hough did not discuss Jason's work performance but only gossiped about the events to the previous night's outing with other Integreon agents and external-contract staffed reviewers at a bar or bars.  Hough and the others would meet at a bar, create a team, and play a form of Jeopardy game while drinking and conversing at the bar.

33.     Because of my observations of Hough's engagements with Jason, who consistently goofed off during workhours, often disappearing from his workstation and document review area, and large reviewer room, I question Jason on how many documents on average does he review per hour.  In response to my questions proffered to Jason, he boasted about having reviewed only fifteen (15) documents in a period of two (2) weeks or ten (10) business days.

34.     After Royal's review of the 9000 documents and early after the beginning and duration of the obvious and incessant slow response, delay, and poor performance of his computer workstation, Royal observed that Hough took Jason into a nearby meeting room, but its lights were not turned on during their meeting.

35.     After Hough and Jason departed the meeting room, Royal questioned Jason stating, "Jason, what did she say to you?  Are you in trouble?" In reply, Jason laughed and said, "Man, they do care; they make money anyway off us.  I only come hear to get money for my social activities. Otherwise, I don't care, and they don't seem to mind either.  She wanted to talk to be about going out to the bar and she told me about what happened at the bar last night."

36.     At all times material, Integreon via its agents allowed Jason to claim hours and be paid a paycheck for his purported time worked, i.e. time not worked.

37.     Based on information and belief, Jason remained unscathed and without disciplinary action by Integreon, at least until I raised the issues of not being given necessary tools to perform my job duties, harassment, discrimination, and disparate treatment based on my race.

The Plaintiff requests a trial by jury.

38.    After the Fourth of July week and Royal's completed review of the 9000 documents, on or about

39.    From about the June 2018 to at least July 2018, I watched Catherine Hough observed Jason being away from his desk and not performing his job duties as a document reviewer and temporary and contracted employee.

40.    Catherine Hough, to my knowledge and based on Jason's representations, never spoke to and addressed Jason about his job performance.

41.    Based on my personal observations, Catherine Hough and other agents of Integreon, such as Angela Abney (a Project Team Lead), treated nonblack electronic reviewers differently and more favorably than black/African American electronic reviewers, particularly in disciplinary matters.

42.    During or about the week before 4 July 2018, I completed electronic review of nine thousand (9000) documents.

43.    At all times material, Royal suffered multiple adverse employment actions including but not limited to being attacked, harassed, forced into a hostile environment, discriminated and retaliated against and discharged because of his race and opposition conduct.

44.    At all times material, Integreon and its agents replaced Royal with a non-African American employee because co-defendants employed non-African American employees after discharging Royal and its temporary and contracted electronic document review positions were fungible.

45.    At all times material, Royal's opposition conduct included but was not limited to reporting, complaining and threatening to sue Integreon Managed Solutions, Inc., Haley Choi, Catherine Hough, Angela Abney, Jason Guckert, Julie Laufenberg, Marni Helfand and

The Plaintiff requests a trial by jury.

unknown others acting in the discrimination, harassment, hostile environment, intentional infliction of emotional distress, and retaliation against Royal, all because of his race.

46.    At all times material, Integreon treated at least one non-African American more favorably than it treated Royal because Integreon via its agents allowed a white male to goof off and not perform his job duties as a temporary and contracted electronic document reviewer by signing into his computer but not performing electronic document review, claiming hours not worked, and being paid for those hours.

47.    At all times material, Royal not only watched the white male goof off and not perform electronic document review but personally conversed with and questioned the white male about the white male's claiming time for not performing electronic discovery and the deliberate indifference by at least Catherine Hough.

48.    At all times material, the white male boasted about reviewing on fifteen (15) documents in a period of two (2) weeks or ten (10) business days.

49.    At all times material, Integreon via its agents allowed the white male to claim hours and be paid a paycheck for his time not worked.

50.    At all times material, Integreon's agents committed a theft of monies from its client law firm(s) and end-client Pfizer, Inc.

51.    At all times material, Integreon's agents chose to steal and cheat Pfizer, Inc. out of unearned monies and allowed the white male fail to perform his job duties because of he was white/Caucasian and Integreon profited from the white male being paid a paycheck unearned— monetary theft via implicit consent.

52.    Integreon flipflopped on its purported basis for discharging Royal alleging at least three (3) different purported reasons:

The Plaintiff requests a trial by jury.

- First, Integreon reported via Matt Pordum to Synergy Legal Staffing that Integreon "had not additional work for [Royal] at this time," i.e. on or about 16 August 2020;

- Second, Integreon

53.     On or before 14 August 2018, Integreon did not provide notice to Royal that it had discharged him from reviewing electronic documents on behalf of Integreon—i.e. discharged from Royal employment in the form of electronic discovery review on behalf of Integreon.

54.     On or before 14 August 2018, Integreon did not provide notice to Synergy Legal Staffing that it had discharged Royal from reviewing electronic documents on behalf of Integreon—*i.e.* discharged from Royal employment in the form of electronic discovery review on behalf of Integreon.

55.     On 14 August 2018, Matt Pordum, Synergy Legal Staffing, sent out an email to Royal stating, in part:

> Good Afternoon, Matt Pordum here at Synergy Legal Staffing. I hope you are having a great start to the week.  Integreon has a new document review matter that is expected to last 2 to 4 weeks starting on Monday August 20th at their Austin office, which is located at 9900 Spectrum Drive| Austin, TX 78717.  The rate is $24 per hour, 40 hours a week. Facility hours are 7am-7pm Monday through Friday and front-loading is of course permitted.  Please let me know if you are available and if so I will be in touch ASAP to hopefully confirm you. I hope all is well, Matthew Pordum[.] (Emphasis added).

56.     On and before 16 August 2018, Royal went to work at Integreon and performed electronic document review, and at the end of his business day, Royal departed Integreon in possession of his security ID badge.

57.     On 16 August 2018, at 6:36 p.m. CT, Matt Pordum, Synergy Legal Staffing, contacted Royal, stating, in part:

> Good Evening, Matt Pordum here at Synergy Legal Staffing. Unfortunately Integreon has informed me that they have no

> additional work for you at this time and as a result you should not
> report back to work tomorrow, Friday August 17th.  If you could
> confirm receipt of this email by replying I would greatly appreciate
> it.  I wanted to thank you for your hard work and professionalism,
> Additionally if you could please send your badge back to Integreon
> at your convenience that would be awesome. Matt[.] (Emphasis
> added).

58.     In response to the 16 August 2018 email from Matt Pordum, Royal contacted  Mr.

Pordum to question Mr. Pordum's statements in Pordum's 16 August 2018 email in light of Mr.

Pordum's prior email on 14 August 2018 seeking document reviewers for new document

review projects at Integreon.  In reply to Royal's concerns and questions, Mr. Pordum informed

Royal that he would contact Integreon and get back to Royal.

59.     On 17 August 2018, Matt Pordum informed Royal that he was released from "his

project at Integreon at their [sic] request due to their not being any additional work for

[Royal]."  Mr. Pordum sent an email to Karen J. Pordum, CEO, Synergy Legal Staffing,

stating:

> Good Morning Karen, I've copied Austin attorney Gregory Royal
> to this email.  I released Gregory Royal moments ago from his
> project at Integreon at their request **due to their not being any
> additional work for him**.  Gregory would like to speak with you
> about his release when you are able.  Thanks in advance for your
> assistance with his situation, Matt[.] (Emphasis added).

60.     On 20 August 2018, Julie Laufenberg, Global Human Resources, Integreon, proffered

that the purported basis for Integreon's discharge of Royal was "based on conversations with

individuals in Austin and a review of your performance."

61.     Integreon informed Royal that he was released from "his project at Integreon at their

[sic] request due to their not being any additional work for [Royal]."  Mr. Pordum sent an email

to Karen J. Pordum, CEO, Synergy Legal Staffing, stating:

> Good Morning Karen, I've copied Austin attorney Gregory Royal
> to this email.  I released Gregory Royal moments ago from his

The Plaintiff requests a trial by jury.

project at Integreon at their request **due to their not being any additional work for him**.  Gregory would like to speak with you about his release when you are able.  Thanks in advance for your assistance with his situation, Matt[.] (Emphasis added).

62.     At all times material, Integreon's agents included but were not limited to Marni Helfand, Julie Laufenberg, Hailey Choi, Catherine Hough, Jason Guckert, and Angela Abney who were decision-makers and/or policymakers having individual authority over Royal.

63.     At all times material, Marni Helfand, Julie Laufenberg, Hailey Choi, Catherine Hough, Jason Guckert, and Angela Abney possessed the supervisory and authoritative positions over Royal and exercised their supervisory and authoritative positions over him to discriminate, harass, force him into a hostile environment, and retaliation against him.

64.     At all times material, co-defendant Marni Helfand (Helfand), individually and as a joint tortfeasor, was a policymaker/decision-maker as the General Counsel for Integreon.

65.     At all times material, Helfand was essentially the same as Integreon in exercising authority over Royal because she had hiring and firing authority him.

66.     At all times material, Helfand exercised her authority as the finality on Integreon discharging Royal because of his opposition conduct and race.

67.     At all times material, Helfand accepted as her "cat's paw" each, including but not limited to, Julie Laufenberg, Hailey Choi, Catherine Hough, Jason Guckert, and Angela Abney.

68.     At all times material, Helfand discriminated and retaliated against Royal because of his opposition conduct and race.

69.     At all times material, Helfand defamed Royal in his profession before Synergy Legal Staffing.

The Plaintiff requests a trial by jury.

70.    Royal was present during one conversation between Helfand and Synergy Legal Staffing wherein Helfand discriminated, defamed in his profession, and retaliated against him because of his opposition conduct and race.

71.    Helfand chose to defame in his profession and shed Royal in a false light before Synergy Legal Staffing to cover up her discrimination and retaliation against Royal as well the discrimination and retaliation of the other Integreon agents.

72.

73.    Helfand carried out an adverse action against Royal by discriminating, defaming, and retaliating against him before Synergy Legal Staffing by stating that he would never work for Integreon again.

74.    At all times material, co-defendant Julie Laufenberg (Laufenberg), individually and as a joint tortfeasor, was a policymaker/decision-maker as the Head of Human Resources for Integreon.

75.    At all times material, Laufenberg was essentially the same as Integreon in exercising authority over Royal because she had hiring and firing authority him.

76.    At all times material, Laufenberg exercised her authority as to the finality in Integreon discharging Royal because of his Title VII opposition conduct and race.

77.    At all times material, Laufenberg acted as a "cat's paw" to Helfand.

78.    At all times material, Laufenberg accepted Hailey Choi as her cat's paw and placed her rubber stamp on the defamatory statements and false representations about Royal and his job performance.

79.    At all times material, Laufenberg discriminated and retaliated against Royal because of his opposition conduct and race.

The Plaintiff requests a trial by jury.

80. At all times material, Julie Laufenberg was aware that there existed a legal agreement between Royal and Synergy, entered for the benefit of Integreon.

81. At all times material, Laufenberg was aware that there existed a quasi-contract between Integreon and Royal as a direct and proximate result of the legal agreement between Royal and Synergy, entered for the benefit of Integreon.

82. At all times material, Laufenberg acted with her racist animus to harass, discriminate, retaliate, and to interfere with and destroy the quasi-contract between Integreon and Royal that was based on Royal's legal agreement with Synergy.

83. At all times material, Laufenberg acted with her racist animus to harass, discriminate, retaliate, and to interfere with and destroy Royal's legal agreement with Synergy, entered for the benefit of Integreon.

84. At all times material, Laufenberg defamed Royal in his profession before Synergy Legal Staffing.

85. Royal was present during one conversation between Laufenberg and Synergy Legal Staffing wherein Laufenberg discriminated, defamed in his profession, and retaliated against him because of his opposition conduct and race.

86. Laufenberg chose to defame in his profession and shed Royal in a false light before Synergy Legal Staffing to cover up her discrimination and retaliation against Royal as well the discrimination and retaliation of the other Integreon agents.

87. Laufenberg carried out an adverse action against Royal by discriminating, defaming, and retaliating against him before Synergy Legal Staffing by falsely accusing Royal of failing to perform his job duties while Integreon allowed the white male to perform his job duties at a quantity substantially less than Royal or not to perform his job duties at all.

The Plaintiff requests a trial by jury.

88.     At all times material, Laufenberg was aware of Royal's complaints about Integreon's agent(s) sabotaging his work performance and failing to provide him the tools necessary to perform his job duties at his previous frequency and pace but chose to remain deliberately indifferent.

89.     At all times material, co-defendant Haley Choi (Choi), individually and as a joint tortfeasor, was a policymaker/decision-maker as a Director for Integreon employed at its Austin facility located at 9900 Spectrum Drive, Austin, Texas 78717.

90.     At all times material, Haley Choi was aware that there existed a legal agreement between Royal and Synergy, entered for the benefit of Integreon.

91.     At all times material, Choi was aware that there existed a quasi-contract between Integreon and Royal as a direct and proximate result of the legal agreement between Royal and Synergy, entered for the benefit of Integreon.

92.     At all times material, Choi acted with her racist animus to harass, discriminate, retaliate, and to interfere with and destroy the quasi-contract between Integreon and Royal that was based on Royal's legal agreement with Synergy.

93.     At all times material, Choi acted with her racist animus to harass, discriminate, retaliate, and to interfere with and destroy Royal's legal agreement with Synergy, entered for the benefit of Integreon.

94.     At all times material, Choi was essentially the same as Integreon in exercising authority over Royal because she had hiring and firing authority him.

95.     At all times material, Choi exercised her authority as to the finality in Integreon discharging Royal because of his opposition conduct and race.

96.     At all times material, Choi acted as a "cat's paw" to Laufenberg and Helfand.

97.    At all times material, Choi discriminated, chose to inflect emotional, mental, and physical distress upon Royal, defamed him in his profession, and retaliated against him because of his opposition conduct and race.

98.    At all times material, Choi defamed Royal in his profession before Synergy Legal Staffing.

99.    Royal was present during one conversation between Choi and Synergy Legal Staffing wherein Choi discriminated, defamed in his profession, and retaliated against him because of his opposition conduct and race.

100.    Choi chose to defame in his profession and shed Royal in a false light before Synergy Legal Staffing to cover up her discrimination and retaliation against Royal as well the discrimination and retaliation of the other Integreon agents.

101.    Choi carried out an adverse action against Royal by discriminating, defaming, and retaliating against him before Synergy Legal Staffing by falsely accusing Royal of failing to perform his job duties while Integreon allowed the white male to perform his job duties at a quantity substantially less than Royal or not to perform his job duties at all.

102.    At all times material, Choi was aware of Royal's complaints about Integreon's agent(s) sabotaging his work performance and failing to provide him the tools necessary to perform his job duties at his previous frequency and pace but chose to remain deliberately indifferent.

103.    At all times material, Choi was aware of Jason Guckett discriminating and harassing Royal because of his race.

104.    At all times material, Choi was aware of Jason Guckett cyberstalking Royal via the Relativity tool and its monitoring portion.

The Plaintiff requests a trial by jury.

105.   At all times material, Choi chose to join Jason Guckett's daily discrimination and harassment and to remain deliberately indifferent to Jason Guckett's daily discrimination and harassment against Royal.

106.   At all times material, Choi possessed but did not exercise her authority over Jason Guckett to put an end to his discrimination and harassment motivated by his racist animus against Royal.

107.   At all times material, Royal overheard and witnessed Jason Guckett's attacks against him motivated by Jason Guckett's racist animus against Royal.

108.   At all times material, co-defendant Catherine Hough, individually and as a joint tortfeasor as a Project Manager for Integreon employed at its Austin facility located at 9900 Spectrum Drive, Austin, Texas 78717.

109.   At all times material, Hough was essentially the same as Integreon in exercising authority over Royal because she had hiring and firing authority him.

110.   At all times material, Hough exercised her authority as to the finality in Integreon discharging Royal because of his opposition conduct and race.

111.   At all times material, Hough acted as a "cat's paw" to Choi, Laufenberg and Helfand.

112.   At all times material, Hough discriminated and retaliated against Royal because of his opposition conduct and race.

113.   At all times material, Hough defamed Royal in his profession before Integreon and Synergy Legal Staffing.

114.   At all times material, Royal was present and personally witnessed Hough defame him in his profession before a law firm client of Integreon, the law firm client a counsel for Pfizer, Inc.

The Plaintiff requests a trial by jury.

115.   Hough discriminated, chose to inflect emotional, mental, and physical distress upon Royal, defamed him in his profession, and retaliated against him because of his opposition conduct and race.

116.   Hough chose to personally, as an individual and acting on behalf of Integreon, defame in his profession and shed Royal in a false light before the law firm client to cover up her discrimination and retaliation against Royal as well the discrimination and retaliation of the other Integreon agents.

117.   Hough carried out an adverse action against Royal by discriminating, defaming, and retaliating against him before Integreon and Synergy Legal Staffing by falsely accusing Royal of failing to perform his job duties while Integreon allowed the white male to perform his job duties at a quantity substantially less than Royal or not to perform his job duties at all.

118.   At all times material, Hough was aware of Royal's complaints about Integreon's agent(s) sabotaging his work performance and failing to provide him the tools necessary to perform his job duties at his previous frequency and pace but chose to remain deliberately indifferent.

119.   At all times material, Hough, motivated by her racist animus, personally and directly attacked, defamed, harassed and discriminated against Royal because of his race.

120.   At all times material, Hough was aware of multiple Integreon agents cyberstalking/attacking Royal via the Relativity tool and its monitoring portion.

121.   At all times material, Hough possessed but did not exercise her authority over the other Integreon agents to put an end to their discrimination and harassment motivated by their racist animus against Royal.

122.   At all times material, Royal overheard and witnessed Hough's attacks against him motivated by Hough's racist animus against him.

The Plaintiff requests a trial by jury.

123.   At all times material, on information and belief, Hough initiated the discharge and prohibition of plaintiff Gregory Allen Royal from any subsequent work at Integreon and defamed him in his profession before Synergy Legal Staffing.

124.   At all times material, Hough individually, personally, and on behalf of Integreon, engaged in the theft of monies from Integreon's law firm client and end client Pfizer, Inc.

125.   At all times material, co-defendant Jason Guckert (Guckert), individually and as a joint tortfeasor as a Project Team Lead for Integreon employed at its Austin facility located at 9900 Spectrum Drive, Austin, Texas 78717.

126.   At all times material, Guckert was essentially the same as Integreon in exercising authority over Royal because he possessed authority to start and stop plaintiff Gregory Royal's performance of job duties, direct how and when Royal was to complete his job duties, tell/direct Royal where not to and where to sit, e.g., directly adjacent to Guckert to be surveilled and monitored by Guckert, when to or when not to take a break from work, monitor his work production and quality, and to conference meetings including Royal.

127.   At all times material, Guckert acted as a "cat's paw" to Hough, Choi, Laufenberg and Helfand.

128.   At all times material, Guckert discriminated and retaliated against Royal because of his opposition conduct and race.

129.   At all times material, Guckert defamed Royal in his profession before Integreon.

130.   At all times material, Royal was present and personally witnessed Guckert defame him in his profession before the agents of Integreon.

131.   Guckert, personally and as an individual and acting on behalf of Integreon, discriminated, chose to inflict emotional, mental, and physical distress upon Royal, defamed him in his profession, and retaliated against him because of his opposition conduct and race.

The Plaintiff requests a trial by jury.

132.   Guckert carried out an adverse action against Royal by discriminating, defaming, and retaliating against him before Integreon by falsely accusing Royal of failing to perform his job duties while Integreon allowed the white male to perform his job duties at a quantity substantially less than Royal or not to perform his job duties at all.

133.   At all times material, Guckert was aware of Royal's complaints about Integreon's agent(s) sabotaging his work performance and failing to provide him the tools necessary to perform his job duties at his previous frequency and pace.

134.   At all times material, Guckert, motivated by his racist animus, personally and directly attacked, defamed, harassed and discriminated against Royal because of Royal's race.

135.   At all times material, Gucket was aware of multiple Integreon agents cyberstalking/attacking Royal via the Relativity tool and its monitoring portion.

136.   At all times material, Royal overheard and witnessed Gucket's attacks against him motivated by Gucket's racist animus against him.

137.   At all times material, on information and belief, Gucket participated in the initiation of the discharge and prohibition of Royal from any subsequent work at Integreon.

138.   At all times material, co-defendant Angela Abney (Abney), individually and as a joint tortfeasor as a Project Team Lead for Integreon employed at its Austin facility located at 9900 Spectrum Drive, Austin, Texas 78717.

139.   At all times material, Abney was essentially the same as Integreon in exercising authority over Royal because she possessed authority to start and stop Royal's performance of job duties, direct how and when Royal was to complete his job duties, tell/direct Royal where not to and where to sit, e.g., directly adjacent to Guckert to be surveilled and monitored by Guckert, monitor Royal's work production and quality, when to or when not to take a break from work, and to conference meetings including Royal.

The Plaintiff requests a trial by jury.

140.   At all times material, Abney acted as a "cat's paw" to Hough, Choi, Laufenberg and Helfand.

141.   At all times material, Abney discriminated and retaliated against Royal because of his opposition conduct and race.

142.   At all times material, Abney defamed Royal in his profession before Integreon.

143.   At all times material, Royal was present and personally witnessed Abney defame him in his profession before the agents of Integreon.

144.   Abney, personally and as an individual and acting on behalf of Integreon, discriminated, chose to inflect emotional, mental, and physical distress upon Royal, defamed him in his profession, and retaliated against him because of his opposition conduct and race.

145.   Abney carried out an adverse action against Royal by discriminating, defaming, and retaliating against him before Integreon by falsely accusing Royal of failing to perform his job duties while Integreon allowed the white male to perform his job duties at a quantity substantially less than Royal or not to perform his job duties at all.

146.   At all times material, Abney was aware of Royal's complaints about Integreon's agent(s) sabotaging his work performance and failing to provide him the tools necessary to perform his job duties at his previous frequency and pace.

147.   At all times material, Abney, motivated by her racist animus, personally and directly attacked, defamed, harassed and discriminated against Royal because of his race.

148.   At all times material, Abney was aware of multiple Integreon agents cyberstalking/attacking Royal via the Relativity tool and its monitoring portion.

149.   At all times material, Royal overheard and witnessed Abney's attacks against him motivated by Abney's racist animus against him.

The Plaintiff requests a trial by jury.

150.   Royal personally overheard Abney boast about Hough's and her discrimination and defamation against Royal to another agent Project Team Lead of Integreon (a short and petite female).

151.   Royal overheard Abney state, "That's 180K he'll never see," to the other female Project Team Lead.

152.   At all times material, on information and belief, Abney participated in the initiation of the discharge and prohibition of Royal from any subsequent work at Integreon.

### General Allegations as to All Counts

153.   The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

154.   All evidentiary documents therein attached to and filed with Royal's VERIFIED COMPLAINT and VERIFIED AMENDED COMPLAINT are realleged and incorporated in their entirety by reference as though fully set forth herein, for sake of financial economy and recordation efficiency (e.g., natural resource recycling).

155.   I was employed with Integreon from on or about 30 May 2018 – 17 August 2018.

156.   At all times material, Integreon and its decision-makers, policymakers, and agents were aware that there existed a legal agreement between Royal and Synergy, entered for the benefit of Integreon.

157.   At all times material, Integreon and its decision-makers, policymakers, and agents were aware that there existed a quasi-contract between Integreon and Royal as a direct and proximate result of the legal agreement between Royal and Synergy, entered for the benefit of Integreon.

158.   At all times material, Integreon and its decision-makers, policymakers, and agents acted with its racist animus to harass, discriminate, retaliate, and to interfere with and destroy the

The Plaintiff requests a trial by jury.

quasi-contract between Integreon and Royal that was based on Royal's legal agreement with Synergy.

159.   At all times material, Integreon and its decision-makers, policymakers, and agents acted with its racist animus to harass, discriminate, retaliate, and to interfere with and destroy Royal's legal agreement with Synergy, entered for the benefit of Integreon.

160.   At all times material, Angela Abney acted in cahoots with Catherine Hough, Jason Guckert, and Hailey Choi to harass, discriminate, retaliate, and to destroy the legal agreement between Synergy and Royal (entered for the benefit of Integreon) and the quasi-contract between Integreon and Royal.

161.   At all times material, on information and belief, Angela Abney began to exploit and abuse the Relativity tool for her malicious purpose of harassing, discriminating, retaliating, and interfering with and destroying the legal agreement between Synergy and Royal and the quasi-contract between Royal and Integreon.

162.   Because of my race, African American/Black, I was held to a different and adverse standard whereby, Hailey Choi, Catherine Hough, Jason Guckert, and Angela Abney stereotyped me based on my race and concluded that I was not intelligent enough to review documents at the very fast/high rate to achieve review of 9000 documents in less than one work week.

163.   On or about 12 July 2018, Catherine Hough hovered above me and about my immediate area shouting out, "I'm concerned about those nine thousand docs . . . I'm concerned about those nine thousand docs." She repeated this over and over.   Hough did not customarily pass my desk from behind.  Instead, she passed along the aisle adjacent the conference rooms so that she did not disturb the document reviewers.

The Plaintiff requests a trial by jury.

164.    I am personally aware that Catherine Hough held conference with an attorney for the law firm client that litigated the respective civil case about my reviewed 9000 documents.

165.    Catherine Hough told a Scott (last name unknown), a Quality Check person (QCer), "The attorney told me to send him an email later when I got home."  I then observed Catherine Hough depart the review center for the workday.

166.    On or about 13 July 2018, upon entering the review room and aisle directly in front of my desk, Scott, the QCer, shouted to Catherine Hough, "Are we going to review the rest of his documents today?"

167.    Catherine Hough replied to Scott, "No, we are just going to leave that alone."  But Catherine Hough, Angela Abney, Scott (last name unknown) and Jason Guckert thereafter began to harass and continue their discrimination by incessant monitoring using the Relativity tool.

168.    On information and belief, from personal experience, the Relativity tool—considerably and noticeably—slows the document reviewer's thin client computing device to a drag or consistent hang—i.e. extremely poor response time basically a failure of the device.

169.    From on or about 13 July 2018 to 16 August 18, Catherine Hough and other Integreon agents and representatives harassed and discriminated against me based on my race.

170.    On information and belief, Catherine Hough led and directed other Integreon agents and employees to inhibit my rate of document review by, including but limited to, constantly and incessantly monitoring my computer and electronic review tool, Relativity, using their Relativity monitoring tools.

171.    On information and belief, via personal testing and observation during pervious document reviews external to Integreon, Royal has obtained knowledge that Relativity slows down considerably with constant monitoring; the slow response becomes easily noticeable.

The Plaintiff requests a trial by jury.

172.    On information and belief, Catherine Hough and others spread gossip and defamatory statements about me throughout Integreon and before Integreon's law firm clients because of their racist and discriminatory intent to defame, slander, libel, and shed Royal in a false light before Integreon and its law firm client(s).

173.    On information and belief, Catherine Hough led a systemic and continuous conspiracy to sabotage my success and tenure at Integreon motivated by her racist animus and because of my opposition conduct.

174.    At all times material, Catherine Hough was aware that there existed a legal agreement between Royal and Synergy, entered for the benefit of Integreon.

175.    At all times material, Catherine Hough was aware that there existed a quasi-contract between Integreon and Royal as a direct and proximate result of the legal agreement between Royal and Synergy, entered for the benefit of Integreon.

176.    At all times material, Catherine Hough acted with her racist animus to harass, discriminate, retaliate, and to interfere with and destroy the quasi-contract between Integreon and Royal that was based on Royal's legal agreement with Synergy.

177.    At all times material, Catherine Hough acted with her racist animus to harass, discriminate, retaliate, and to interfere with and destroy Royal's legal agreement with Synergy, entered for the benefit of Integreon.

178.    At all times material, Angela Abney acted in cahoots with Catherine Hough, Jason Guckert, and Hailey Choi to harass, discriminate, retaliate, and to destroy the legal agreement between Synergy and Royal (entered for the benefit of Integreon) and the quasi-contract between Integreon and Royal.

179.    At all times material, on information and belief, Angela Abney began to exploit and abuse the Relativity tool for her malicious purpose of harassing, discriminating, retaliating, and

The Plaintiff requests a trial by jury.

interfering with and destroying the legal agreement between Synergy and Royal and the quasi-contract between Royal and Integreon.

180.    Abney joined in a discriminatory, retaliatory, and unethical conspiracy along with Hough, Guckert, and Choi to first prohibit Royal from performing his job duties, thereby sabotaging his work efforts, and thereafter sending their conspiracy's results and or fruits to Royal via her feedback email communications.

181.    At all times material, Abney acted with her discriminatory and racist animus to build a pretext for the predetermined actions of Hough, Guckert, and Choi to harass, discriminate, and retaliate against Royal by destroying his employ at Integreon under his legal agreement with Synergy and quasi-contract with Integreon.

182.    After Catherine Hough's telephone conversations with the law firm client's attorney(s), Royal overheard Angela Abney as she and another Integreon agent (Abigail, last name unknown) walked behind his chair and conversing during their passing.  Angela Abney stated to the other Integreon agent (Abigail), "That's 180K he'll never see."  This occurred on the same day that I complained to Haley Choi about the failing computing device and not being able to perform my job duties because Integreon failed to provide me with the proper tools necessary to do my work.

183.    Like Catherine Hough hovering about Royal and complaining about the 9000 docs that Royal coded, Angela Abney intended for Royal to hear her boasts about having intentionally caused him financial injuries as well as upcoming termination from Integreon.

184.    Angela Abney was present during the meeting wherein I complained that Integreon intentionally and maliciously assigned extremely large documents to me and that Integreon agents knew that assignment would crash my computing device

The Plaintiff requests a trial by jury.

185.    On information and belief, Integreon agents, acting as individuals and on behalf of Integreon, acted to aid and abet Integreon in its building a case to argue that my review rate was low and more so to defame me in front of the attorney and law firm client that had inquired about the 9000 documents.

186.    At all times material, Angela Abney was aware that there existed a legal agreement between Royal and Synergy, entered for the benefit of Integreon.

187.    At all times material, Angela Abney was aware that there existed a quasi-contract between Integreon and Royal as a direct and proximate result of the legal agreement between Royal and Synergy, entered for the benefit of Integreon.

188.    At all times material, Angela Abney acted with her racist animus to harass, discriminate, retaliate, and to interfere with and destroy the quasi-contract between Integreon and Royal that was based on Royal's legal agreement with Synergy.

189.    At all times material, Angela Abney acted with her racist animus to harass, discriminate, retaliate, and to interfere with and destroy Royal's legal agreement with Synergy, entered for the benefit of Integreon.

190.    On or about August 2018, Hailey Choi and Angela Abney directed Royal to sit immediately adjacent to Jason Guckert. Royal explicitly expressed his desire not to be made to sit next to Jason Guckert.  Choi and Abney denied Royal's request not to sit next to Jason Guckert.  Royal was not afforded his choice of seat similar to his other non-African American peers who were allowed to sit wherever they wanted.  Royal was forced to sit next to Guckert against Royal's will.

191.    Integreon's disparate treatment of Royal adversely altered the terms and conditions of his employment and his employment contract with Synergy.  The disparate treatment also

adversely altered the quasi-employment contract between Royal and INTEGREON in that it prohibited Royal from performing his job duties under said quasi-employment contract.

192.    Royal's peers, including and especially his nonblack peers, were afforded their choice of workspaces based on availability to sit wherever they desired, especially within any areas that may have been established for a respective project.  The nonblack peers who were allowed to sit based on their personal desire were therefore treated more favorably than Royal.

193.    It was generally, with exception, the policy of Integreon for the reviewers assigned to a same project to sit anywhere available in the large review room.  Occasionally, reviewers were asked to sit, at least in proximity, in a particular area of their respective team lead who was also assigned to the same project.

194.    Jason Guckert was not the team lead for the project that Integreon had assigned Royal. As such, there was a Confidentiality Screen that was automatically established between the different, discrete and distinct, projects of Guckert and Royal that prohibited Gucket having knowledge of and viewing the confidential content of documents assigned to Royal.

195.    Jason Guckert and Integreon violated established confidentiality agreement(s) terms between Integreon and Pfizer, Inc. and between Integreon and its client law firm(s) whereby only reviewers assigned to a specific project would review the content of electronic documents for a respective project.

196.    Daily, Jason Guckert leaned towards Royal, entering into Royal's personal space, which severely harassed and interfered with Royal's job performance.  Guckert did so trespass into Royal's personal space, daily, to view Royal's traversing through his assigned electronic documents, having average sizes in kilobytes, and coding the same.

197.    Guckert's violations of Royal's personal space prohibited Royal from performing his job duties because Guckert's body odor severely prohibited Royal from his document review—a perverse, repugnant, and pungent body odor.

198.    After repeatedly violating the established Confidentiality Agreement(s) for very long periods of time, even an hour or more, Guckert leaped from his desk, causing his headphones to be yanked from his head, rushed to Hailey Choi, and said in a loud voice, "There is no way he is reading that fast, no one can read that fast."  Choi responded, "How do you know that he is not reading the documents?  Maybe, he is."  Guckert repeated his previous statement, "There is not way he can read that fast."

199.    Jason Guckert brought his racism, racist animus, and racist prejudices and stereotypes into the workplace.  Because Royal did not fit Guckert's racist stereotype for an African American, level of intelligence, ability to read, Guckert became not only irate but also obsessed over Royal's superior rate of document review.

200.    On multiple times, Royal observed at least three distinct and discrete tirades thrown by Guckert on three different days, Jason Guckert acted with his racist animus to put an end to the employment contract between Synergy and Royal for Royal's employ at Integreon.

201.    I, Gregory Royal, observed Jason Guckert's sudden and disturbing conduct and his abrupt and violent movements.  I overheard and listened to the discussions initiated by Guckert and Hailey Choi.

202.    In each of Guckert's attacks on Royal whereby Guckert acted with his racist animus against Royal, Guckert moved Choi to take disciplinary action against Royal.  Regarding Guckert's attacks on Royal, at no time did Integreon establish that the quality of Royal's work product was unsatisfactory.

The Plaintiff requests a trial by jury.

203.     I (Royal) also observed Jason Guckert return to his seat adjacent to me huffing and puffing in anger with angst, as he moved about in sharp and forceful, abrupt movements.  The color of his pale skin had become reddish like a tomato.

204.     Secretly, perceiving Guckert's anger and or angst to be racially motivated and brought about by his racist stereotype(s) about the ability and level of an African American to read, I waited for Guckert to question me about whether I was reading the documents.  I wanted very badly to confront him about his racism and racist stereotyping based on his predetermined level of intelligence for a black person.

205.     Guckert did not question me as to whether I had read my coded documents, he would sit with his angry face gawking at me and my terminal.  His harassing and violent conduct prohibited me from performing my job duties and caused me severe emotional and mental distress.

206.     In response to his gawking and trespass into my personal space, I turned my monitor away from Guckert's view.  Instead of addressing me verbally, Guckert would shift his seated position to that somewhat behind me at my shoulder, looking over my shoulder, to view the content on my display.  I did not appreciate Gucket's daily gawking, entry into my personal space, and smelling another man so close.  Again, I requested to be allowed to move away from Guckert but was refused.  Integreon terminated me after my second request to sit where I desired and where there was availability.

207.     Because of Guckert's racism and racist stereotyping of me, he often forced me to pay visits to the restroom that would have been unnecessary but for his racist animus, harassment, and racial discrimination against me.  Guckert leaned into my personal space and gawked at me while only about a foot or less than two feet away daily.

The Plaintiff requests a trial by jury.

208.    I personally observed and listened to Jason Guckert's repeated but unfounded complaints about my job performance (rate of review and not the quality of my work) based on his predetermined level of intelligence for me as a black man to Hailey Choi on the three (3) distinct and discrete occasions.

209.    Integreon via Angela Abney, or any other, did not send me any feedback email communications, during this period next to Jason Guckert, regarding the quality of my coded documents.

210.    After the third time that Jason Guckert rushed to Hailey Choi to complain about the speed at which I coded electronic documents, and forcing me to sit immediately adjacent to Jason Guckert, Integreon assigned only electronic documents that were abnormally and considerably large to me.  Said documents, having double-digit sizes in Megabytes, were much larger than average electronic documents assigned, previously, to me or to my peers, including and especially my nonblack peers.

211.    The abnormally and considerably much larger than average electronic documents, double-digit Megabytes, took minutes to be rendered, including times up to 10 to over 20 minutes to load for viewing.

212.    I complained about the lengthy periods of time it took—over 10 minutes and even over 20 minutes—to load the double-digit Megabyte documents for his review.  Angela Abney, Hailey Choi, and Jason Guckert acknowledged that they were aware that the electronic documents assigned to me took a considerable time to be rendered on the display but ordered me to sit and wait for the documents to be displayed for review.

213.    Because of the abnormally large size of the documents, double-digit Megabytes, Royal necessarily coded a significantly a smaller number of documents per hour than other document reviewers.

The Plaintiff requests a trial by jury.

214.    At all times material, Choi, Abney, or Guckert did not inform Royal that Integreon had assigned to any other of his peers electronic documents having comparable sizes to the documents, double-digit Megabytes, assigned to Royal.  As such, Integreon had calculated to sabotage Royal's review rate and efforts towards his job performance.

215.    The abnormally large electronic documents having double-digit Megabyte sizes were nearly impossible to review because they not only took tens of minutes to load, it was next to impossible to navigate from page to page about the same documents.  Generally, similar sized documents found in a electronic document review would be removed from the batches of documents and manipulated so that they could be reviewed via another means.  As such, Integreon had calculated to sabotage Royal's review rate and efforts towards his job performance.

216.    After Integreon had assigned Royal the abnormally large electronic documents having double-digit Megabyte sizes, Angela Abney began sending our feedback communication emails daily to Royal.  Abney's feedback complained about the low number of documents—*i.e.* the abnormally large electronic documents having double-digit Megabyte sizes admitted by Integreon as having considerable delay in being rendered on display—reviewed by Royal.  As such, Integreon was creating support and its case for its calculated discharge of Royal from his employment at Integreon.[1]

---

[1]  A comparison between  first number and frequency of feedback email communications from Angela Abney to Royal at times before said 4 July 2018 week versus a second number and frequency of feedback email communications from Abney to Royal after the 4 July 2018 week evidences a substantial increase in the number and frequency of feedback communications.  The substantial increase evidences not only that Integreon calculated to lying in wait to discharge Royal as well as the adverse effect and mental, emotional, and physical distress and injuries intentionally caused by Integreon against Royal.

The Plaintiff requests a trial by jury.

217.     Royal complained and reported to Derek Drizin that Integreon's assignment of the abnormally large electronic documents having double-digit Megabyte sizes to him but not to any of his nonblack peers.  Royal complained that Integreon's assignment of the abnormally large documents was maliciously motivated by the racist animus of Hough, Guckert, Choi, and Abney against Royal because he is African American.  Integreon did not assigned Royal's nonblack peers similar extremely large electronic documents.

218.     Within one or two weeks from Integreon's assignment of the abnormally large electronic documents to Royal, Integreon discharged Royal from his employment at Integreon. Jason Guckert (in cahoots with Angela Abney and Catherine Hough) acted as one cat's paw of Hailey Choi, Choi authorized the discharge of Royal based on the malicious discriminatory and retaliatory animus of Guckert.  Choi placed her rubber stamp on Guckert's racist animus and discrimination and authorized the discharge of Royal.

219.     At all times material, Jason Guckert was aware that there existed a legal agreement between Royal and Synergy, entered for the benefit of Integreon.

220.     At all times material, Jason Guckert was aware that there existed a quasi-contract between Integreon and Royal as a direct and proximate result of the legal agreement between Royal and Synergy, entered for the benefit of Integreon.

221.     At all times material, Jason Guckert acted with her racist animus to harass, discriminate, retaliate, and to interfere with and destroy the quasi-contract between Integreon and Royal that was based on Royal's legal agreement with Synergy.

222.     At all times material, Jason Guckert acted with her racist animus to harass, discriminate, retaliate, and to interfere with and destroy Royal's legal agreement with Synergy, entered for the benefit of Integreon.

223.    I complained that Integreon agents and representatives Catherine Hough, Angela Abney, Jason Guckert, and Scott (last name unknown), among others, treated me negatively and differently than they treated my nonblack document reviewers-peers.

224.    These Integreon agents and representatives engaged in systemic, widespread, and continuous discrimination and retaliation motivated by their racist animus and based on my race as an African American.

225.    I specifically informed Integreon attorney Derek Drizin that I would bring a civil lawsuit based on discrimination, harassment, and hostile environment against Integreon and all involved agents (named herein) after Integreon discharged me on or after August 17, 2018.

226.    I had also complained many times about not being given the proper tools to perform my job duties.  I informed Derek Drizin that the named Integreon agents were working in cahoots to sabotage my work efforts based on my race.  I supported my complaints and statements by comparing Integreon's consistent favorable treatment of Jason (last name unknown at this time) with my high numbers of reviewed documents prior to the Fourth of July week.  Jason is the white male who consistently failed to perform his job duties while Catherine Hough treated him favorably simultaneously while discriminating against me.  I provided further support by including Integreon's adverse treatment of me after the Fourth of July week.

227.    Jason (White), who sat immediately in front of me at the same table and therefore likely on the same subnet, did not experience the same or similar problems of computer failure, considerable application delay, and extremely long hang times as I.

228.    Other White peers sat adjacent to me, on my right and left sides"; we worked on the same project.  I questioned my peers whether they were experiencing any delay, hang times, or slow response times with their computers (thin clients).  Each responded in the negative.  My peers did not experience the same computer and or application problems that I experienced.

The Plaintiff requests a trial by jury.

229.    Royal began to experience consistent computer and or application problems after his review of 9000 documents and immediately after the Fourth of July week.  The problems were not resolved and the effect of Integreon's involvement matched it being deliberately indifferent, at best.

230.    Integreon's response to Royal's repeated notifications that his computer and or Relativity application had failed preventing him from performing his job duties was that of accepted knowledge of the cause(s) of said computer/application problems.

231.    The computer/application problems prevented Royal from performing his job duties daily from about 8:30 – 9:00 a.m. until at or up to about 4:30 – 5:00 p.m. at the time of Catherine Hough's departure.  This occurred on a daily basis from the Fourth of July week until Integreon's discharge of Royal.

232.    I personally observed the slow response and computing failures continue until Integreon discharged me based on my race and opposition conduct.  My nonblack peers did not experience the same computer and application problems.

233.    Integreon via its agency Haley Choi, Catherine Hough, Jason Guckert, Angela Abney, and unknown others were intentionally and maliciously harassing, discriminating, and inflecting extreme and severe emotional distress and physical injuries on Royal.

234.    Integreon violated Title VII and 42 U.S.C. § 1981 with its racist and discriminatory intent to harass, discriminate, retaliate, and inflict emotional distress as well as mental and physical injuries against Royal.

235.    Via its calculated, deceitful, and malicious racism, discrimination, severe and extreme harassment,  and retaliation against Royal, in addition to its Title VII and 42 U.S.C. § 1981 violations, Integreon cheated and stole monies from its law firm clients and ultimately Pfizer, Inc.

236.   Pfizer, Inc. and the law firm clients of Integreon paid Integreon monies for Royal's time on the pay clock wherein he suffered under the racist discrimination, harassment, and retaliation of Integreon.

237.   On information and belief, Integreon discharged me in direct retaliation for my complaining about racial discrimination, harassment, and a hostile environment.

238.   On information and belief, Integreon discharged me in direct retaliation against Royal because he informed Integreon agents that he would file a Title VII discrimination and retaliation lawsuit against Integreon and its agents.

239.   ADMISSIONS BY INTEGREON: I personally witnessed and listened to Catherine Hough deny that she was talking to any attorney about the 9000 documents that I reviewed.  I personally witnessed and listened to Catherine Hough state that she was talking about another document reviewer.

240.   At issue is who was she speaking about and to what attorney was she discussing the 9000 documents.

241.   I personally witnessed and listened to Catherine Hough and Integreon—i.e. Marni Halfend—admit that Hough was discussing 9000 documents reviewed by a particular reviewer that was not me with the attorney over the project and for the law firm client representing Pfizer, Inc.

242.   I was present during a telephone conversation including Marni Helfand (Helfand), General Counsel for Integreon, Karen J. Pordum, Esq. (Pordum), President of Synergy Legal Staffing, and me wherein Helfand admitted to Pordum that Integreon did not and would not have terminated me for an alleged low document review rate.

243.   Helfand's representations to Pordum are contradicted by her previous statements as well as statements made prior by Human Resources Julie Laufenberg.

The Plaintiff requests a trial by jury.

244.    In that same telephone conversation, Marni Helfand alleged that Integreon discharged Royal because he had threatened to sue Integreon.  Royal agreed that he had threatened to sue Integreon because (via its named agents) it harassed, discriminated, and retaliated against him based on, inter alia, his race.

245.    Marni Helfand accepted Hailey Choi as her cat's paw and placed a rubber stamped on the defamatory statements and representations of Hailey Choi and Julie Laufenberg.

246.    On information and belief, Integreon discharged me prior to any statement from me directly to Helfand or Laufenberg that I would bring a civil lawsuit based on discrimination against Integreon—but after my statements to other temporary and contracted employees.

247.    At all times material, Marni Helfand was aware that there existed a legal agreement between Royal and Synergy, entered for the benefit of Integreon.

248.    At all times material, Marni Helfand was aware that there existed a quasi-contract between Integreon and Royal as a direct and proximate result of the legal agreement between Royal and Synergy, entered for the benefit of Integreon.

249.    At all times material, Marni Helfand acted with her racist animus to harass, discriminate, retaliate, and to interfere with and destroy the quasi-contract between Integreon and Royal that was based on Royal's legal agreement with Synergy.

250.    At all times material, Marni Helfand acted with her racist animus to harass, discriminate, retaliate, and to interfere with and destroy Royal's legal agreement with Synergy, entered for the benefit of Integreon.

251.    Integreon proffered two contradictory statements as to its alleged reasoning for discharging me, but either proffered reason is but for a mere pretext for its racist animus, discrimination, hostile environment, harassment, and retaliatory discharge based on my opposition conduct and race.

The Plaintiff requests a trial by jury.

252.    Integreon's contradictory statements as to its proffered reasoning for firing me are also

a but for a mere pretext for the individual and personal racist animus, harassment, hostile

environment, discrimination, and retaliation of each of its agents, policymakers, and decision-

makers named herein.

253.    On information and belief, Integreon's retaliation based on my race and opposition

conduct in violation of Title VII and 42 USC § 1981 includes its blacklisting me before

Synergy Legal Staffing and other third-party electronic staffing agencies.

254.    I was discriminated and retaliated against based on my race (Black/African-American)

and as a direct result of Integreon discovering that I was threatening to file a civil

discrimination and retaliation suit because of Integreon's discrimination, harassment, hositile

environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as

amended, and 42 USC § 1981.

255.    Integreon's and its agents', acting as individuals and on and behalf of Integreon,

harassment was severe and extreme in that an intentional and calculated prohibition of Royal

performing his job duties inside the workplace would be unbearable to a ordinary personal

having a reasonable mind.

256.    Integreon and its agents denying plaintiff Royal the very basis of his being inside of and

at Integreon constitutes severe and extreme such that an ordinary personal having a reasonable

mind should not be expected to bear said prohibition.

257.    Integreon's and its agents', acting as individuals and on and behalf of Integreon, created

a hostile environment so extreme and outrageous that Royal suffered emotional, mental, and

physical distress causing him physical injuries of insomnia, nausea, migraine headaches, chest

and heart pains, acid reflux, vomiting, and the like.

The Plaintiff requests a trial by jury.

258.    At all times material, the named agents of Integreon acted personally, individually, and on behalf of Integreon.

259.    Based on the actions of Integreon via and its named agents as described above, the terms and conditions of employment for Royal were materially and substantially altered adversely and he suffered mental, emotional, and physical injuries as a direct and proximate result of said actions.

260.    On or about August 2018, Marni Helfand threatened Royal with not being able to obtain employment via law firms or other document review agencies if he filed his, inter alia, discrimination, harassment, and retaliation lawsuit against Integreon.

261.    In response to Helfand threatening statements, as perceived by Royal, Integreon would blacklist Royal from future employment via other law firms and electronic document review agencies.

262.    Royal has been retaliated and discriminated against by Cobra Legal Solutions, Inc. 8501 N. Mopac Expy #400, Austin, TX 78759, because of the apparent blacklist and threats by Integreon, as threatened by Marni Helfand.

263.    Cobra Legal Solutions, Inc. is only about three blocks or a quarter of a mile from Royal's residence within Austin, Texas.  Cobra Legal Solutions, Inc. consistently advertises via Indeed and other job/career websites for electronic document reviewers for projects at its Austin location.

264.    Royal has submitted multiple job applications in response to Cobra Legal Solution, Inc.'s job announcements, but Cobra Legal Solutions, Inc. is set on the blacklist established by Integreon in retaliation against Royal for his Title VII opposition conduct.

The Plaintiff requests a trial by jury.

265.    On a good faith basis and/or for an argument for existing change in the law, Royal maintains his claims under Title VII based on the fact that the EEOC—despite arguments made by opposing parties—issued a Right To Sue letter to Royal.

266.    Plaintiff Royal preserves his right to argue before the appellate court that in light of a private party defendant being involved the EEOC's issuance of a Right To Sue letter means or should merely mean that the EEOC will not on behalf of the plaintiff pursue any administrative or legal action against a private party defendant, but that a question remains as to whether the plaintiff himself my pursue claims under Title VII in a federal court.  Otherwise, the issuance of a Right to Sue letter by the EEOC to a complainant is not only a needless and wasteful exercise of futility but also at least a misleading and fraudulent inducement upon a complainant to file a Title VII complaint in a federal court as a plaintiff.

267.    Royal's arguments are in good faith and based on the fact that the Supreme Court of the United States has not adjudicated whether equitable principles can save a Title VII claim.

268.    Royal evinced arguments and evidence supporting that because of Defendants' repeated and consistent violations of Title VII via racial discrimination and retaliation and retaliation based on his prior Title VII opposition conduct, Royal now has and will repeatedly have multiple Title VII discrimination and retaliation complaints against Integreon.

269.    Integreon and the above-named defendants are set on their repeat violations of Title VII. Integreon consistently advertises for electronic document reviewers in Austin, Texas.

270.    Royal filed his application with Indeed in response to Integreon's job announcement sent to Royal by Indeed.

271.    In response to Royal's submission of his job application to Indeed, Integreon's agent and document review recruiter reached out and placed a telephone call to Royal's cell phone

into Austin, Texas.  Integreon's recruiter interviewed Royal regarding an immediate need for

an up and coming start of a document review on about three days after the interview.

272.     Royal informed Integreon's recruiter that he had worked for Integreon at the Austin

location.  That recruiter stated, "Great!" She informed Royal that he would hear back from her

regarding the project starting in a few days; however, Integreon did not contact Royal.

273.     On information and belief, in response to its discovery of Royal's prior Title VII

opposition conduct, Integreon again retaliated against Royal and removed his application from

the hiring process.  Integreon denied Royal equal employment opportunity and continued its

intentional discrimination and retaliation against Royal because of his opposition conduct and

race.

274.     Equitable Principles comprise the Court allowing Royal to maintain his Title VII claims

to settle the issue of whether Royal's Title VII claims are with merit.  Royal has shown that the

same issue will—unequivocally—be brought before the Court again.  Via known repeated

violations of Title VII against Royal, Integreon's discrimination and retaliation continues in

this current day, 2020.

275.     Integreon's discharging and not rehiring Royal because of his Title VII opposition

conduct of threatening to sue and suing based on Integreon's racial discrimination and

retaliation are with merit.

276.     Equitable principles want for Royal to maintain his Title VII claims herein the above

entitled proceeding.

### Count One
### (Discrimination Based on Race against Integreon Managed Solutions, Inc. under Title VII)

277.     The foregoing paragraphs above are realleged and incorporated in their entirety by

reference as though fully set forth herein.

The Plaintiff requests a trial by jury.

278.    On information and belief, Integreon via and its agents discriminated and retaliated against Royal based on his Title VII opposition conduct and race.

279.    On information and belief, Royal was unlawfully discharged because he engaged in activities protected under Title VII such as reporting and complaining about harassment, discrimination, hostile environment, and retaliation by Integreon's agents.

280.    On information and belief, Royal was treated differently than whites and non-African Americans, for example, a white male having the first name of "Jason" who was allowed by Integreon and its named agents to goof off at work without performing document review and collect his paycheck for hours unworked.

281.    Integreon's disparate treatment of Royal from his nonblack peers as well as its discrimination, harassment, and retaliation severely altered the terms and conditions of Royal's employment.  Royal could not perform the job he was under contracts (legal agreement between Royal and Synergy and quasi-contract between Royal and Integreon), as explained above.

**Count Two**
**(Harassment Based on Race against Integreon Managed Solutions, Inc. under Title VII)**

282.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

283.    At all times material, Integreon via and its named agents harassed Royal because of his Title VII opposition conduct and race.

284.    On information and belief, Integreon via and its named agents harassed Royal by spreading false and negative gossip to defame him throughout Integreon.

285.    On information and belief, Integreon via and its named agents harassed Royal by sabotaging his production rate by (1) causing slow response, delays, and hangs in his

41

computing device and/or transmission media, and (2) assigning extremely large documents of over 600 pages and greater than 10 Megabytes while nonblack reviewers were assigned documents of less than 20 pages and no more than one megabyte in size.

286.    On information and belief, Integreon via and its named agents harassed Royal by misusing the Relativity monitoring tool to negatively degrade the computer's performance used by Royal.

287.    At all times material, Royal did not consent to said harassment and found the actions to be unwelcomed, intimidating, and offensive.

288.    At all times material, Royal found said harassment to be severe and extreme

289.    At all times material, an objective person having a reasonable mind would find the harassment to be severe and extreme.

290.    At all times material, there was a causal connection between the harassment and the adverse action caused to Royal by Integreon via and its agents.

291.    Integreon's harassment was so extreme and severely altered the terms and conditions of Royal's employment.  Royal could not perform the job he was under contracts (legal agreement between Royal and Synergy and quasi-contract between Royal and Integreon), as explained above.

292.    The harassment was so severe and extreme that an ordinary person having reasonable mind would find harassment prohibiting an employee from performing his job duties to be extreme and severe.

### Count Three
### (Hostile Environment Based on Race against Integreon Managed Solutions, Inc. under Title VII)

293.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

The Plaintiff requests a trial by jury.

294.    At all times material, Royal found said hostile environment to be  outrageous and extreme and unbearable.

295.    At all times material, an objective person having a reasonable mind would find the hostile environment to be unwelcomed, outrageous and extreme and unbearable.

296.    At all times material, an objective person having a reasonable mind would find the hostile environment to have changed and altered adversely the terms and conditions of Royal's employment and workplace.

297.    At all times material, there was a causal connection between the hostile environment and the adverse action caused to Royal by Integreon via and its agents, who forced Royal into its hostile environment because of his Title VII opposition conduct and race.

298.    Integreon's hostile environment was so extreme and severely altered the terms and conditions of Royal's employment.  Royal could not perform the job he was under contracts (legal agreement between Royal and Synergy and quasi-contract between Royal and Integreon), as explained above.

299.    The hostile environment was so severe and extreme that an ordinary person having reasonable mind would find harassment prohibiting an employee from performing his job duties to be extreme and severe.

**Count Four**
**(Retaliation Based on Race against Integreon Managed Solutions, Inc. under Title VII)**

300.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

301.    Royal engaged in protected activity by reporting harassment, hostile environment, and complaining that he was being discriminated against because of his race.

The Plaintiff requests a trial by jury.

302.    Marni Helfand, General Counsel for Integreon, admitted before Pordum, Synergy Legal

Staffing, and Royal that Royal was discharged because he engaged in protected activity under

Title VII by opposing the workplace harassment, discrimination, and retaliation of the above-

named Integreon policymakers, decision-makers, and agents.

303.    At all times material, there was a causal connection between the retaliation and the

adverse action caused to Royal by Integreon via and its agents.

**Count Five**
**(Defamation Per Se against Against Marni Helfand,  Personally and Individually)**

304.    The foregoing paragraphs above are realleged and incorporated in their entirety by

reference as though fully set forth herein.

305.    Marni Helfand made statements she knew to be false at the time she made them to

Karen Pordum, owner of Synergy Legal Staffing.

306.    At all times material, because of Marni Helfand's untrue statements, Synergy Legal

Staffing had not communicated with Royal and had not offered or staffed him on any other

subsequent projects.

307.    Plaintiff Gregory Royal has suffered economic losses as well as emotional and mental

distress and physical sickness including depression as a direct and proximate result of

Integreon's known and intentional violations of Title VII and 42 U.S.C. § 1981.

**Count Six**
**(IIED against Marni Helfand, Personally and Individually)**

308.    The foregoing paragraphs above are realleged and incorporated in their entirety by

reference as though fully set forth herein.

309.    Marni Helfand intended her untrue statements to cause Plaintiff Royal emotional,

mental, and physical sickness and illness.

The Plaintiff requests a trial by jury.

310.    She made untrue statements to intimidate and cause fear in Plaintiff Royal so he would not file his Title VII complaint against Integreon.

311.    Marni Helfand acted intentionally and/or recklessly because she did not investigate and actually review all facts, evidence, documents, logs, and records before making her untrue statements to Karen Pordum and Synergy Legal Staffing.

312.    Marni Helfand's conduct constitutes extreme and outrageous conduct on part of a general counsel for a corporation and an attorney.

313.    Marni Helfand's conduct directly and proximately caused Plaintiff Royal to suffer emotional, mental, and physical distress.

314.    Marni Helfand's conduct also directly and proximately caused Plaintiff Royal to suffer depression, insomnia, and nausea on a nightly basis.

### Count Seven
### (IIED against Catherine Hough, Personally and Individually)

315.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

316.    Catherine Hough intended her untrue statements to cause Plaintiff Royal emotional, mental, and physical sickness and illness.

317.    She made untrue statements to intimidate and cause fear in Plaintiff Royal and to harass him as a black male.

318.    Catherine Hough misused the Relativity tool to knowingly and maliciously cause a degradation of Plaintiff Royal's computer and to sabotage his job performance.

319.    Catherine Hough acted intentionally and/or recklessly by defaming Plaintiff Royal before the attorney at the law firm with statements she knew to be untrue at the time she made them.

The Plaintiff requests a trial by jury.

320.    Catherine Hough' conduct constitutes extreme and outrageous conduct because she sought to unlawfully force Plaintiff to review documents at a slower pace to cheat and steal money away from the law firm and client and to defame Plaintiff Royal before the law firm.

321.    Catherine Hough' conduct directly and proximately caused Plaintiff Royal to suffer emotional, mental, and physical distress.

322.    Catherine Hough' conduct also directly and proximately caused Plaintiff Royal to suffer depression, insomnia, and nausea on a nightly basis.

**Count Eight**
**(IIED against Angela Abney, Personally and Individually)**

323.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

324.    Angela Abney intended her untrue statements to cause Plaintiff Royal emotional, mental, and physical sickness and illness.

325.    She made untrue statements to intimidate and cause fear in Plaintiff Royal and to harass him as a black male.

326.    Angela Abney misused the Relativity tool to knowingly and maliciously cause a degradation of Plaintiff Royal's computer and to sabotage his job performance.

327.    Angela Abney acted intentionally and/or recklessly by defaming Plaintiff Royal before the attorney at the law firm with statements she knew to be untrue at the time she made them.

328.    Angela Abney's conduct constitutes extreme and outrageous conduct because she sought to unlawfully force Plaintiff to review documents at a slower pace to cheat and steal money away from the law firm and client and to defame Plaintiff Royal before the law firm.

329.    Angela Abney's conduct directly and proximately caused Plaintiff Royal to suffer emotional, mental, and physical distress.

The Plaintiff requests a trial by jury.

330.    Angela Abney's conduct also directly and proximately caused Plaintiff Royal to suffer depression, insomnia, and nausea on a nightly basis.

## Count Nine
### (IIED against Haley Choi, Personally and Individually)

331.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

332.    Haley Choi intended her untrue statements to cause Plaintiff Royal emotional, mental, and physical sickness and illness.

333.    She made untrue statements to intimidate and cause fear in Plaintiff Royal and to harass him as a black male.

334.    Haley Choi directed her subordinates to misuse the Relativity tool to knowingly and maliciously to cause a degradation of Plaintiff Royal's computer and to sabotage his job performance.

335.    Haley Choi directed her subordinates to place Plaintiff Royal's computer on a subnet and or port having a much slower response time than nonwhite document reviewers to cause a degradation of Plaintiff Royal's computer and to sabotage his job performance.

336.    Haley Choi acted intentionally and/or recklessly by defaming Plaintiff Royal before the attorney at the law firm with statements she knew to be untrue at the time she made them.

337.    Haley Choi's conduct constitutes extreme and outrageous conduct because she sought to unlawfully force Plaintiff to review documents at a slower pace to cheat and steal money away from the law firm and client and to defame Plaintiff Royal before the law firm.

338.    Haley Choi's conduct directly and proximately caused Plaintiff Royal to suffer emotional, mental, and physical distress.

The Plaintiff requests a trial by jury.

339.    Haley Choi's conduct also directly and proximately caused Plaintiff Royal to suffer depression, insomnia, and nausea on a nightly basis.

### Count Nine
### (IIED against Jason Guckert, Personally and Individually)

340.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

341.    Jason Guckert intended his untrue statements to cause Plaintiff Royal emotional, mental, and physical sickness and illness.

342.    He made untrue statements to intimidate and cause fear in Plaintiff Royal and to harass him as a black male.

343.    Jason Guckert on a weekly basis cyber stalked Plaintiff Royal.

344.    He misused the Relativity tool to knowingly and maliciously to cause a degradation of Plaintiff Royal's computer and to sabotage his job performance.

345.    Jason Guckert acted on his racist stereotypes and racist animus against a black male.

346.    Based on his racist animus against a black male, Jason Guckert constantly rushed to Haley Choi to defame and disparage Plaintiff Royal of not being able to "read and review documents" faster than Jason Guckert.

347.    Plaintiff Royal overheard Jason Guckert cry out to Haley Choi, "There is no way he is reading those documents that fast" and "No one can read that fast . . . he must be cheating . . . and not reading the documents."

348.    Jason Guckert acted intentionally and/or recklessly by defaming Plaintiff Royal before Haley Choi with statements he knew to be untrue at the time he made them.

The Plaintiff requests a trial by jury.

349.    Jason Guckert's conduct constitutes extreme and outrageous conduct because he sought to unlawfully force Plaintiff to review documents at a slower pace to cheat and steal money away from the law firm and client and to defame Plaintiff Royal before the law firm.

350.    Jason Guckert's conduct directly and proximately caused Plaintiff Royal to suffer emotional, mental, and physical distress.

351.    Jason Guckert's conduct also directly and proximately caused Plaintiff Royal to suffer depression, insomnia, and nausea on a nightly basis.

### Count Ten
**(Discrimination Based on Race against Integreon Managed Solutions, Inc. under 42 U.S.C. § 1981)**

352.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

### Count Eleven
**(Harassment Based on Race against Integreon Managed Solutions, Inc. under 42 U.S.C. § 1981)**

353.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

354.    Integreon Managed Solutions, Inc. via its agents harassed Plaintiff Gregory Royal by spreading negative gossip defaming him throughout Integreon and sabotaging his production rate by assigning extremely large documents of over 600 pages and greater than 10 Megabytes while nonblack reviewers were assigned documents of less than 20 pages and no more than one megabyte in size.

355.    Integreon Managed Solutions, Inc. via its agents harassed Plaintiff Gregory Royal by misusing the Relativity monitoring tool and negatively degrading the computer's performance used by Gregory Royal.

### Count Twelve

The Plaintiff requests a trial by jury.

**(Hostile Environment Based on Race against Integreon Managed Solutions, Inc. under 42 U.S.C. § 1981)**

356.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

**Count Thirteen**
**(Retaliation Based on Race against Integreon Managed Solutions, Inc. under 42 U.S.C. § 1981)**

357.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

358.    Plaintiff Gregory Royal engaged in protected activity by reporting harassment, hostile environment, and complaining that he was being discriminated against because of his race.

359.    Marni Helfand, General Counsel for Integreon, admitted that Plaintiff Royal was discharged because he engaged in protected activity.

**Count Fourteen**
**(Discrimination Based on Race in violation of 42 U.S.C. § 1981 against Marni Helfand, Personally and Individually)**

360.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

**Count Fifteen**
**(Retaliation Based on Race in violation of 42 U.S.C. § 1981 against Marni Helfand, Personally and Individually)**

361.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

**Count Sixteen**
**(Discrimination Based on Race in violation of 42 U.S.C. § 1981 against Catherine Hough, Personally and Individually)**

362.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

The Plaintiff requests a trial by jury.

## Count Seventeen
**(Retaliation Based on Race in violation of 42 U.S.C. § 1981 against Catherine Hough, Personally and Individually)**

363.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

## Count Eighteen
**(Discrimination Based on Race in violation of 42 U.S.C. § 1981 against Angela Abney, Personally and Individually)**

364.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

## Count Nineteen
**(Retaliation Based on Race in violation of 42 U.S.C. § 1981 against Angela Abney, Personally and Individually)**

365.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

## Count Twenty
**(Discrimination Based on Race in violation of 42 U.S.C. § 1981 against Haley Choi, Personally and Individually)**

366.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

## Count Twenty-One
**(Retaliation Based on Race in violation of 42 U.S.C. § 1981 against Haley Choi, Personally and Individually)**

367.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

## Count Twenty-Two
**(Discrimination Based on Race in violation of 42 U.S.C. § 1981 against Jason Guckert, Personally and Individually)**

The Plaintiff requests a trial by jury.

368.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

**Count Twenty-Three**
**(Retaliation Based on Race in violation of 42 U.S.C. § 1981 against Jason Guckert, Personally and Individually)**

369.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

**Count Twenty-Four**
**(IIED against Julie Laufenberg, Personally and Individually)**

370.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

371.    Julie Laufenberg intended her untrue statements to cause Plaintiff Royal emotional, mental, and physical sickness and illness.

372.    She made untrue statements to intimidate and cause fear in Plaintiff Royal so he would not file his Title VII complaint against Integreon.

373.    Julie Laufenberg acted intentionally and/or recklessly because she did not investigate and actually review all facts, evidence, documents, logs, and records before making her untrue statements to Karen Pordum and Synergy Legal Staffing.

374.    Julie Laufenberg's conduct constitutes extreme and outrageous conduct on part of a director of Human Resources for a corporation.

375.    Julie Laufenberg's conduct directly and proximately caused Plaintiff Royal to suffer emotional, mental, and physical distress.

376.    Julie Laufenberg's conduct also directly and proximately caused Plaintiff Royal to suffer depression, insomnia, and nausea on a nightly basis.

**Count Twenty-Five**

The Plaintiff requests a trial by jury.

**(Discrimination Based on Race in violation of 42 U.S.C. § 1981 against Julie Laufenberg, Personally and Individually)**

377.   The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

**Count Twenty-Six**
**(Retaliation Based on Race in violation of 42 U.S.C. § 1981 against Julie Laufenberg, Personally and Individually)**

378.   The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

**Count Twenty-Seven**
**(Retaliation Based on Opposition Conduct by Plaintiff Gregory Royal against Julie Laufenberg under 42 U.S.C. § 1981)**

379.   The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

380.   Plaintiff Gregory Royal engaged in protected activity by reporting harassment, hostile environment, and complaining that he was being discriminated against because of his race.

381.   Julie Laufenberg chose to retaliate against plaintiff Gregory Royal because he (1) complained and reported the racial discrimination, harassment, hostile environment of Integreon via and its named agents and (2) threatened to sue Integreon and its agents based their discrimination, harassment, hostile environment based on his race.

**Count Twenty-Eight**
**(Retaliation Based on Opposition Conduct by Plaintiff Gregory Royal against Integreon Managed Solutions, Inc. under 42 U.S.C. § 1981)**

382.   The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

383.   Plaintiff Gregory Royal engaged in protected activity by reporting harassment, hostile environment, and complaining that he was being discriminated against because of his race.

The Plaintiff requests a trial by jury.

384.   Marni Helfand, General Counsel for Integreon, admitted that Plaintiff Royal was discharged because he engaged in opposition conduct.

## Count Twenty-Nine
### (Retaliation Based on Opposition Conduct by Plaintiff Gregory Royal against Marni Helfand under 42 U.S.C. § 1981)

385.   The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

386.   Plaintiff Gregory Royal engaged in protected activity by reporting harassment, hostile environment, and complaining that he was being discriminated against because of his race.

387.   Marni Helfand chose to retaliate against plaintiff Gregory Royal because he (1) complained and reported the racial discrimination, harassment, hostile environment of Integreon via and its named agents and (2) threatened to sue Integreon and its agents based their discrimination, harassment, hostile environment based on his race.

## Count Thirty
### (Retaliation Based on Opposition Conduct by Plaintiff Gregory Royal against Catherine Hough under 42 U.S.C. § 1981)

388.   The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

389.   Plaintiff Gregory Royal engaged in protected activity by reporting harassment, hostile environment, and complaining that he was being discriminated against because of his race.

390.

391.   Catherine Hough chose to retaliate against plaintiff Gregory Royal because he (1) complained and reported the racial discrimination, harassment, hostile environment of Integreon via and its named agents and (2) threatened to sue Integreon and its agents based their discrimination, harassment, hostile environment based on his race.

## Count Thirty

The Plaintiff requests a trial by jury.

**(Retaliation Based on Opposition Conduct by Plaintiff Gregory Royal against Haley Choi under 42 U.S.C. § 1981)**

392.    The foregoing paragraphs above are realleged and incorporated in their entirety by reference as though fully set forth herein.

393.    Plaintiff Gregory Royal engaged in protected activity by reporting harassment, hostile environment, and complaining that he was being discriminated against because of his race.

394.    Haley Choi chose to retaliate against plaintiff Gregory Royal because he (1) complained and reported the racial discrimination, harassment, hostile environment of Integreon via and its named agents and (2) threatened to sue Integreon and its agents based their discrimination, harassment, hostile environment based on his race.

## JURY DEMAND

**The Plaintiff requests trial by jury**.

WHEREFORE, the Plaintiff Gregory Royal prays that this Honorable Court award him:

(a)    The sum of $500,000.00 to be awarded against Integreon Managed Solutions, Inc. in compensatory damages of loss salary; emotional, mental, and physical distress and injuries suffered because of the discrimination, harassment, hostile environment, and/or retaliation against him in violation of Title VII and/or 42 U.S.C. § 1981;

(b)    Punitive damages to be awarded against Integreon Managed Solutions, Inc. as a multiple factor of 2x, 3x, 4x, 5x, 6x, 7x, 8x, or 9x times the amount of the compensatory damages to be determined by a jury to deter such future misconduct;

(c)    The sum of $500,000.00 to be awarded against Marni Helfand, personally and individually, in compensatory damages because of her defamation per se against him;

(d)    The sum of $500,000.00 to be awarded against Marni Helfand, personally and individually, in compensatory damages because of her IIED against him;

The Plaintiff requests a trial by jury.

(e)     The sum of $500,000.00 to be awarded against Marni Helfand, personally and individually, in compensatory damages of loss salary; emotional, mental, and physical distress and injuries suffered because of the discrimination, harassment, hostile environment, and retaliation against him in violation of Title VII and/or 42 U.S.C. § 1981;

(f)     Punitive damages to be awarded against Marni Helfand, personally and individually, as a multiple factor of 2x, 3x, 4x, 5x, 6x, 7x, 8x, or 9x times the amount of the compensatory damages to be determined by a jury to deter such future misconduct;

(g)     The sum of $500,000.00 to be awarded against Julie Laufenberg, personally and individually, in compensatory damages because of her IIED against him;

(h)     The sum of $500,000.00 to be awarded against Julie Laufenberg, personally and individually, in compensatory damages of loss salary; emotional, mental, and physical distress and injuries suffered because of the discrimination, harassment, hostile environment, and retaliation against him in violation of Title VII and/or 42 U.S.C. § 1981;

(i)     Punitive damages to be awarded against Julie Laufenberg, personally and individually, as a multiple factor of 2x, 3x, 4x, 5x, 6x, 7x, 8x, or 9x times the amount of the compensatory damages to be determined by a jury to deter such future misconduct;

(j)     The sum of $500,000.00 to be awarded against Catherine Hough, personally and individually, in compensatory damages because of her defamation per se against him;

(k)     The sum of $500,000.00 to be awarded against Catherine Hough, personally and individually, in compensatory damages because of her IIED against him;

(l)     The sum of $500,000.00 to be awarded against Catherine Hough, personally and individually, in compensatory damages of loss salary; emotional, mental, and physical distress and injuries suffered because of the discrimination, harassment, hostile environment, and retaliation against him in violation of Title VII and/or 42 U.S.C. § 1981;

The Plaintiff requests a trial by jury.

(m)      Punitive damages to be awarded against Catherine Hough, personally and individually, as a multiple factor of 2x, 3x, 4x, 5x, 6x, 7x, 8x, or 9x times the amount of the compensatory damages to be determined by a jury to deter such future misconduct;

(n)      The sum of $500,000.00 to be awarded against Haley Choi, personally and individually, in compensatory damages because of her defamation per se against him;

(o)      The sum of $500,000.00 to be awarded against Haley Choi, personally and individually, in compensatory damages because of her IIED against him;

(p)      The sum of $500,000.00 to be awarded against Haley Choi, personally and individually, in compensatory damages of loss salary; emotional, mental, and physical distress and injuries suffered because of the discrimination, harassment, hostile environment, and retaliation against him in violation of Title VII and/or 42 U.S.C. § 1981;

(q)      Punitive damages to be awarded against Haley Choi, personally and individually, as a multiple factor of 2x, 3x, 4x, 5x, 6x, 7x, 8x, or 9x times the amount of the compensatory damages to be determined by a jury to deter such future misconduct;

(r)      The sum of $500,000.00 to be awarded against Angela Abney, personally and individually, in compensatory damages because of her defamation per se against him;

(s)      The sum of $500,000.00 to be awarded against Angela Abney, personally and individually, in compensatory damages because of her IIED against him;

(t)      The sum of $500,000.00 to be awarded against Angela Abney, personally and individually, in compensatory damages of loss salary; emotional, mental, and physical distress and injuries suffered because of the discrimination, harassment, hostile environment, and retaliation against him in violation of Title VII and/or 42 U.S.C. § 1981;

The Plaintiff requests a trial by jury.

(u)     Punitive damages to be awarded against Angela Abney, personally and individually, as a multiple factor of 2x, 3x, 4x, 5x, 6x, 7x, 8x, or 9x times the amount of the compensatory damages to be determined by a jury to deter such future misconduct;

(v)     The sum of $500,000.00 to be awarded against Jason Guckert, personally and individually, in compensatory damages because of his defamation per se against him;

(w)     The sum of $500,000.00 to be awarded against Jason Guckert, personally and individually, in compensatory damages because of his IIED against him;

(x)     The sum of $500,000.00 to be awarded against Jason Guckert, personally and individually, in compensatory damages of loss salary; emotional, mental, and physical distress and injuries suffered because of the discrimination, harassment, hostile environment, and retaliation against him in violation of Title VII and/or 42 U.S.C. § 1981;

(y)     Punitive damages to be awarded against Jason Guckert, personally and individually, as a multiple factor of 2x, 3x, 4x, 5x, 6x, 7x, 8x, or 9x times the amount of the compensatory damages to be determined by a jury to deter such future misconduct;

(z)     Judgement against any individual agent of Integreon, personally and liability, be also made liable to Integreon, under a theory of vicariously liability, *respondeat-superior* liability, agency theory, or the like;

(aa)    costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

(ab)    other damages and further relief as deemed just.

**I affirm, under the penalties for perjury, that the foregoing representations are true.**

DATED:  **18 May 2020**

Gregory Royal, plaintiff, *pro se*

58

The Plaintiff requests a trial by jury.

Respectfully submitted,

Gregory Allen Royal, *pro se*
Plaintiff
8100 N. Mopac Expy., Apt. 277
Austin, Texas 78759
(737)808-6700

The Plaintiff requests a trial by jury.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that Defendants are being served on this day of 18 May 2020 with a copy of this instrument via email service, as agreed between parties, and on 19 May 2020 via US mail.

 /s/  *Gregory Royal*   .
   **Gregory Royal**

## Service of Verified Second Amended Complaint | Royal v. Integreon Managed Solutions, Inc. et al., 1:19-cv-822-RP-ML

From:   Royal Allen (gregorysgrace@yahoo.com)

To:     rhorn@grsm.com; ascott@grsm.com

Date:   Monday, May 18, 2020, 11:38 PM CDT

18 May 2020

Mr. Scott,

I will mail my Verified Second Amended Complaint via US Mail also.

Gregory Royal

  Gregory Royal v Integreon Managed Solutions Inc et al __ 1 19-cv-822-RP-ML.pdf
320.8kB